**FUNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Ollistine M. Jude-Weathersby, | ) | Bankr. No. 24-03393 |
| | ) | |
| Debtor. | ) | Chief Judge Jacqueline Cox |

**Memorandum Opinion on Motion to Examine Fees of Debtor's Attorney (Dkt. 27)**

### Introduction

Chapter 7 bankruptcy cases differ from those filed under other chapters of the Bankruptcy Code.[1] Other chapters have remedies whereby an attorney can be paid either by the debtor or through a plan of reorganization after the filing date. No such postpetition remedy is spelled out in the Bankruptcy Code for chapter 7 cases.

### Jurisdiction

The court has jurisdiction over this matter under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(A), a matter concerning the administration of the estate.

### Background

Filing a chapter 7 case triggers the automatic stay which bars attorneys who file chapter 7 cases for debtors from collecting prepetition debts without leave of court. *See* 11 U.S.C. § 362(a). The granting of a discharge in chapter 7 cases bars attorneys owed funds for investigating and filing chapter 7 cases from collecting those prepetition debts. 11 U.S.C. §

---

[1] All references to the Bankruptcy Code sections are to title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*

727(b).

When faced with this problem in *In re Bethea,* the Seventh Circuit discussed the possibility of debtors rehiring their bankruptcy counsel after filing of the chapter 7 case to perform postpetition services:

> Those who cannot prepay in full can tender a smaller retainer for prepetition work and later hire and pay counsel once the proceeding begins—for a lawyer's aid is helpful in prosecuting the case as well as in filing it.

*In re Bethea,* 352 F.3d 1125, 1128 7th Cir. 2003).

This court commented on *Bethea* in *In re Griffin*:

> In other words, the future debtor and his bankruptcy counsel would both voluntarily enter into a prepetition contract that requires counsel to perform legal services only to the point of filing the bankruptcy case (and perhaps a handful of post-petition services that might include the § 341 meeting); then, if further post-petition services were desirable or necessary, the debtor would have to seek to re-retain the same (or possibly another) bankruptcy attorney for an additional fee that the debtor would not be contractually obligated to pay until after the case is filed. If Chapter 7 debtors' attorneys proceed in reliance on the dictum in that opinion, they ought to proceed with caution, thoroughly considering the implications of such an arrangement under the Illinois Rules of Professional Conduct.

*In re Griffin,* 313 B.R. 757, 766-67 (Bankr. N.D. Ill. 2004).

In response, attorneys have been bifurcating their fee agreements with chapter 7 debtors, dividing their representation into prepetition and postpetition contracts. Fees owed for prepetition work on behalf of a chapter 7 debtor would be discharged; fees owed under a post-petition contract would be collectible as only preptetition debts get discharged under chapter 7.

Ramona Elliott, the Acting Director of the Executive Office for the U.S. Trustee issued a memorandum in 2022 entitled Guidelines for United States Trustee Program Enforcement Related to Bifurcated Chapter 7 Fee Agreements. The program does not condemn split-fee

agreements but cautions that absent contrary local authority they have to be fair and reasonable, entered into with the debtor's fully informed consent and be adequately disclosed. Memorandum from Ramona D. Elliot, Acting Director, Executive Office for U.S. Trustees, to United States Trustees (June 10, 2022) (https://www.justice.gov/ust/page/file/1511976/dl?inline).

Pursuant to statutory authority under 11 U.S.C. § 586 to monitor and appear in all bankruptcy cases U.S. Trustee Patrick S. Layng[2] filed a motion asking the court to examine the fees of Attorney Xiaoming Wu and the Borges & Wu, LLC law firm[3] in connection with the above-captioned bankruptcy case pursuant to 11 U.S.C. § 329(b).[4] Section 329(a) of the Bankruptcy Code requires attorneys who represent debtors, whether or not the attorney applies for compensation, to file with the court a statement of the compensation paid or agreed to be paid.

Section 329(b) states that if the compensation exceeds the reasonable value of the services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to the bankruptcy estate or to the entity that made the payment.

The motion seeks a finding that the retention agreements executed herein by the Debtor and Mr. Wu do not comply with 11 U.S.C. §§ 526 and 528 and are void for that reason. The motion also asks that Mr. Wu be enjoined from violating 11 U.S.C. § 526, as allowed by 11

---

[2] Adam Brief is now the Acting United States Trustee for the Northern District of Illinois.

[3] Because our court allows attorneys to appear, not law firms, the motions will be resolved as to Mr. Wu, not the law firm. Local Bankruptcy Rule 2040-4(A)(3).

[4] On October 23, 2024, the court heard the joint trial of motions to examine the fees of Attorney Xiaoming Wu in five separate chapter 7 cases pending in the Bankruptcy Court for the Northern District of Illinois: *In re Smith*, No. 24-03007; *In re Jude-Weathersby*, No. 24-03393; *In re Wright*, No. 24-03409; *In re Knighten, Jr.*, No. 24-03720 and *In re Green*, No. 24-03890.

-3-

U.S.C. § 526(c).   In addition. the motion seeks civil penalties against Mr. Wu pursuant to section 526(c)(5).

On March 2, 2024, Debtor Ollistine M. Jude-Weathersby (the "Debtor") and Mr. Wu executed an Attorney Retention Contract (the "Prepetition Contract").  Mr. Wu filed the Debtor's petition for chapter 7 bankruptcy relief on March 8, 2024.  The petition was filed without the schedules or statement required by 11 U.S.C. § 521.

A Notice of Deficiency was docketed therein on March 11, 2024 informing the Debtor that several documents had not been filed and that dismissal could result therefrom.  The Court's Notice of Hearing on Dismissal of case for failure to file documents was docketed on March 25, 2024.  The Debtor testified that she was not aware of the Notice of Deficiency and the Notice of Hearing on Dismissal at that time and first became aware of them during a deposition she gave in connection to the motion to examine fees.  Oct. 23, 2024 Trial Transcript, Docket 52, pp. 27-28.  The U.S. Trustee argues that Mr. Wu should not have delayed filing the documents in issue as he was obligated to timely file them under the Attorney Retention Contract but waited to do so until after the Debtor executed the Contract for Postpetition Services, which purports to have been executed on March 11, 2024.  *See* Supplemental Disclosure of Compensation, Docket 18, p. 2.

Mr. Wu filed other required documents seventeen days after the filing date, on March 25, 2024, the day the court filed a Motion to Dismiss for failure to file required documents.  Dockets 13 through 20.

The Debtor's Statement of Financial Affairs ("SoFA"), at line 16, states that she paid $92 for a merged, multi-bureau credit report, credit counseling and debtor education courses in connection with her case.  Docket 15, ¶ 16.  No other payments are noted therein.  In his

-4-

compensation disclosure Mr. Wu stated that he agreed to accept and had accepted $0 in compensation and that the $338 filing fee had been paid. Compensation Disclosure, Docket 1, p. 8, ¶¶ 1-2. He noted therein that in return for the above disclosed fee he agreed to render legal services for all aspects of the bankruptcy case including:

> a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
> b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
> c. Representation of the debtor at the meeting of creditors and confirmation hearing, any adjourned hearings thereof.
> d, [Other provisions as needed] . . .

Compensation Disclosure, Docket 1, p. 8, ¶ 6a-d.[5]

She understood that Mr.Wu was going to represent her through the entire case. Trial Transcript, Docket 52, p. 48. She did not understand the part of the contract that said his duty to represent her was conditioned on her executing a postpetition contract. *Id.*, p. 49. The Debtor testified that she signed the Contract for Postpetition Service on March 2, 2024 when she signed the other documents, not on March 11, 2024 as noted thereon. *Id.*, p. 55. The Debtor testified that she had asked Mr. Wu's office assistant when a Wage Assignment document would be enforced and if it had to be enforced. She wanted to be notified if that was to happen. *Id.*, pp. 58-59. In fact, the Debtor testified that she agreed to pay $3,200 for Mr. Wu's services on March 2, 2024 when she signed the prepetition Attorney Retention Contract. Mr. Wu's position is that she agreed to pay him $3,200 on March 11, 2024, the date noted on the Contact for Postpetition Service.

---

[5] The Wage Assignment was disclosed as part of the postpetition Contract for Postpetition Service. Docket 18. It was not part of the documents filed with the bankruptcy petition on March 8, 2024.

Paragraph 6(d) of the compensation disclosure filed on March 8, 2024 states that Mr. Wu's representation was conditioned on "debtor entering into an agreement after the filing of the case to pay Attorney for services rendered after filing of the case. Should debtor fail to enter into such an agreement, the court may allow Attorney to withdraw from representation of debtor on motion of attorney." Compensation Disclosure, Docket 1, p. 8, ¶ 6d.

On March 25, 2024, Mr. Wu filed his supplemental disclosure of compensation (the "supplemental disclosure"). Docket 18. Mr. Wu stated therein that since filing the compensation disclosure he agreed to accept $3,200 (as anticipated in the prepetition Attorney Retention Contract). He also stated that he received $0 prior to filing the supplemental disclosure. He stated that the balance then due was $3,200. That supplemental disclosure includes the Contract for Postpetition Service.

In ¶ 5 of the supplemental disclosure Mr. Wu stated that "[i]n return for the above-disclosed fee, I have agreed to render legal services as follows: Preparation & Filing of Schedules, Statements, Reaffirmation Agreements, Applications as needed, and Representation of Debtor at 341 Meeting of Creditors." The Contract for Postpetition Service was part of that filing. Docket 18, p. 1.

The Contract for Postpetition Service provides that the $3,200 fee for postpetition service covers "all aspects of a pending Chapter 7 case" and that it was a flat-fee advance payment retainer. Docket 18, p. 2, ¶ 2. The U.S. Trustee notes that this statement may conflict with Mr. Wu's compensation disclosure statement at Docket 1, p. 8, which provides that in return for a $0 fee he agreed prepetition to render legal services for all aspects of the bankruptcy case. The prepetition Attorney Retention Contract provided that the Debtor retained the Attorney "for all

purposes in the bankruptcy case," subject to exceptions in section 3 (Scope of Representation). *Id.*, p. 9, ¶ 2.

The Contract for Postpetition Service provides "[f]or payment of the fee Client consents to automatic bank debit/ACH and/or wage assignment." Docket 18, p. 2, ¶ 2.

Included in the supplemental disclosure is an executed wage assignment that does not state what part of the $3,200 remained outstanding. No ACH agreement or authorization was attached nor was there a schedule of payments informing the Debtor what she had to pay and when to pay it. *Id.*, p. 1.

The U.S. Trustee argues that Mr. Wu should have attached either or both a written, executed ACH agreement that provided amounts and dates of scheduled payments from a specific bank account and a complete wage assignment agreement including details such as the employer's name and a schedule of payments. The U.S. Trustee may be correct. The ACH document was not disclosed in Mr. Wu's supplemental compensation disclosure documents filed on March 25, 2024 at Docket 18. The ACH document is included in his response to the motion to examine fees, filed on June 27, 2024 at Docket 33, Exhibit 6. It states that $400 would be deducted from a bank account on a monthly basis for eight months.

The U.S. Trustee complains that Mr. Wu should have attached an executed ACH agreement to the supplemental disclosure. Motion to Examine Fees, Docket 27, p. 11, ¶ 41. That position is correct. Mr. Wu failed to comply with Bankruptcy Rule 2016(b) and Local Bankruptcy Rule 2016, as the ACH document was not disclosed in the initial compensation disclosure or in the supplemental compensation disclosure. Did the failures regarding the Wage Assignment document to include more information violate section 329, Rule 2016 or Local Rule

2016-1? Possibly.  The problem, explained by Bankruptcy Judge Doyle in *In re St. John*, is that

"[t]he wage assignment allows Wu to collect any unpaid amount owed under the CARA[6] [Court

Approved Retention Agreement] directly from the debtor's wages after the bankruptcy case is

dismissed. This type of agreement is prohibited by the court's Local Bankruptcy Rules regarding

the CARA, which permit the court to deny any fee to an attorney who enters into such an

agreement.  Wu's fee application will be denied." *In re St. John*, 2022 WL 4827351, *1 (Bankr.

N.D. Ill. Sept. 30, 2022).  Judge Doyle aptly explained that wage assignments deprive the debtor

of the right to defend against any collection action Wu could file in a non-bankruptcy court.  "Wu

tried to eliminate the need to file a lawsuit against the debtor and thereby eliminate any chance

for the debtor to raise potential defenses (such as that Wu did not perform under the contract.).

The assignment allows Wu to go straight to collection from the debtor's wages without the

procedural safeguards afforded to a defendant in a lawsuit before and after judgment." *Id.*

(internal citation omitted).

The court acknowledges that the use of wage assignments in chapter 13 cases is

prohibited under the CARA regime but that their use in chapter 7 cases has not been prohibited.

The problem is that even though Mr. Wu disclosed the wage assignment document when

he filed his supplemental postpetition disclosure on March 25, 2024, he did not then disclose the

ACH agreement.

The court is not ruling that attorneys who file chapter 7 cases may not use wage

---

[6] The Court Approved Retention Agreement regime is a program where, in return for a fixed no-look flat fee of $4,500 in chapter 13 cases, attorneys may file a simplified fee application and agree to a number of conditions. For a full description of the program, *see In re Zambrano*, 2022 WL 16646807, *1-2 (Bankr. N.D. Ill. Nov. 3, 2022).

assignments or ACH procedures.  However, Mr. Wu will be enjoined from failing to disclose wage assignments and ACH agreements when filing Rule 2016 disclosures.  Such disclosures help bankruptcy courts and the U.S. Trustee to monitor how attorney fees are assessed in chapter 7 cases and how the fees are collected.

### Section 329 of the Bankruptcy Code and Bankruptcy Rules 2016 and 2017

Section 329(a) of the Bankruptcy Code requires attorneys who represent debtors seeking bankruptcy relief to file with the court a statement of the compensation paid or agreed to be paid by or on behalf of debtors.  Section 329(b) states that if the compensation exceeds the reasonable value of the services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to the bankruptcy estate or to the entity that made the payment.  Section 329 reflects Congress' concern that a debtor's payments to a bankruptcy attorney present a potential for evasion of creditor protection provisions warranting careful scrutiny.  H.R. REP. 95-595, 95th Cong., 1st Sess. 329 (1977), *U.S. Code Cong. & Admin. News 1978*, p. 5963.

Federal Rule of Bankruptcy Procedure 2016 requires attorneys to file the statement required by Bankruptcy Code section 329 within 14 days after the order for relief, or another time as the court may direct.

Local Bankruptcy Rule 2016-1 requires a debtor's attorney to file not only the disclosure statement, but to attach "[e]very agreement between a debtor and an attorney for the debtor that pertains, directly or indirectly, to the compensation paid or given, or to be given, to or for the benefit of the attorney." Local Bankruptcy Rule 2016-1.  The court finds that Local Bankruptcy Rule 2016-1 requires that ACH and Wage Assignments be disclosed.

Federal Rule of Bankruptcy Procedure 2017 provides that on the motion of any party or

-9-

on its own initiative, a court may determine whether any payment of money or any transfer of property by the debtor, made in contemplation of filing for bankruptcy relief, is excessive.

The court has to determine the reasonable value of services rendered and determine whether any excess payment was made by comparing that value to the value given. Even if an attorney engages in a pattern of conduct in a number of cases, the court has to examine services rendered in each case to determine their value. 9 COLLIER ON BANKRUPTCY ¶ 2017.11 (Richard Levin & Henry J. Sommer eds., 16th ed.).

Because the court will order relief for the Debtor under section 526 which allows the voiding of contracts that are misleading, without determining whether they are excessive, it will not be necessary to determine the reasonable value of the services rendered by Mr. Wu.

### Relief Requested

The United States Trustee asks the court to find that neither the Attorney Retention Contract nor the Contract for Postpetition Service complies with the material requirements of sections 526 or 528 of the Bankruptcy Code and for that reason find that the agreements are void. The U.S. Trustee alleges that Mr. Wu omitted critical information from his disclosures regarding his representation of the Debtor because it is difficult to tell whether he was obligated to prepare and file schedules and statements under the prepetition Attorney Retention Contract or under the Contract for Postpetition Service. His initial disclosure states that he was so obligated prepetition as the Attorney Retention Contract provides that he was to provide all services in the bankruptcy case, unless expressly excepted therein. The problem is that his supplemental disclosure, which includes the Contract for Postpetition Service, states that the $3,200 fee covered all aspects of the pending chapter 7 case except for matters listed separately. Is this a

-10-

material inconsistency that makes it impossible to tell whether or when Mr. Wu intended to provide services in the case? Yes, this is a material, misleading inconsistency that justifies finding that the contracts are void.

In 2004 in *In re Griffin*, in the context of a matter where a debtor was loaned funds by a third party to redeem a vehicle, where the loan proceeds included funds for legal fees, this court noted in connection with bifurcated agreements:

> The trick here is that the post-petition contract must really be a post-petition contract. That is, the legally operative events—the offer, acceptance, and exchange of consideration (either a promise to pay or an act of payment in exchange for a promise to render services)—must in fact occur after the date of the Chapter 7 filing to qualify as a claim arising post-petition and falling outside the scope of § 362(a)(6).

*In re Griffin*, 313 B.R. 757, 769-70 (Bankr. N.D. Ill. 2004).

One solution to this problem would be to make prepetition debts owed to bankruptcy counsel nondischargeable to obviate attorneys and debtors having to execute two contracts, one prepetition and another postpetition, as recommended by the American Bankruptcy Institute. *Final Report of the ABI Commission on Consumer Bankruptcy*, AMERICAN BANKRUPTCY INSTITUTE, pp. 94-95, https://consumercommission.abi.org (2019).

Mr. Wu's duty to perform services was conditioned on the Debtor executing an additional agreement postpetition. It is difficult to discern exactly what he was required to do postpetition after the anticipated execution of the postpetition contract since he was already obligated to perform the same services prepetition.

In *In re Brown*, Florida Bankruptcy Judge Isicoff noted that while a chapter 7 lawyer has to be paid by the debtor, the lawyer cannot look to the estate or to the debtor postpetition for

-11-

payment of fees for services rendered or to be rendered if the obligation to pay the fee arose

prepetition. 631 B.R. 77, 85 (Bankr. S.D. Fla. 2021). Judge Isicoff also noted at p. 93 that

"[t]here is no question that using the postpetition agreements to pay for prepetition services is not

acceptable, since that is merely seeking to do indirectly what is prohibited directly, citing *Hazlett*,

2019 WL 1567751, at *9 ("Fees for prepetition services should not be directly or surreptitiously

slipped into the fee charged for postpetition services. If this happens, it could be cause for

disgorgement under § 329 or other sanctions."). *See also In re Baur*, 658 B.R. 930, 946 (E.D.

Mo. 2024) ('[w]e conclude that the Pre and Post-Filing Agreements do not clearly describe the

services to be provided by the Firm. Thus, they do not comply with Section 528(a)(1)." (footnote

omitted)).

**Section 526 of the Bankruptcy Code**

Section 526 places restrictions on debt relief agencies in connection with their efforts to

provide services to persons seeking bankruptcy relief. Attorneys who provide bankruptcy

assistance to assisted persons are debt relief agencies within the meaning of this Bankruptcy

Code provision. *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 239 ("[w]e

hold that attorneys who provide bankruptcy assistance to assisted persons are debt relief agencies

. . ."). An "assisted person" is a person whose debts consist primarily of consumer debts and the

value of whose nonexempt property is less than $226,850. 11 U.S.C. § 101(3).

Section 526(a)(1) states that a debt relief agency shall not fail to perform any service it

told an assisted person it would provide. Mr. Wu did not violate this provision; he actually

performed the service he said he would provide. Section 526(a)(2) states that a debt relief agency

shall not make any statement that is untrue or misleading, or that upon the exercise of reasonable

-12-

care, should have been known by such agency to be untrue or misleading.  The court finds that

Mr. Wu violated section 526(a)(2), as his promises to perform the same services in both the

prepetition contract and the postpetition contract are misleading because it is not clear whether he

was to perform those services prepetition or postpetition.   Section 526(a)(3) states that a debt

relief agency shall not misrepresent to any assisted person, directly or indirectly, affirmatively or

by material omission regarding his services to be provided or the benefits or risks that may result

if such person becomes a debtor in a bankruptcy case. He violated section 526(a)(3) by omitting

to make it clear in the Contract for Postpetition Service that he was already obligated to represent

the Debtor pursuant the Attorney Retention Contract.  His initial disclosure of compensation

statement provides:

> In return for the above-disclosed fee, I have agreed to render legal service
> for all aspects  of the bankruptcy case, including:
>
> a. Analysis of the debtor's financial situation, and rendering advice to the
> debtor in determining whether to file a petition in bankruptcy;
> b. Preparation and filing of any petition, schedules, statement of affairs
> and plan which may be required;
> c. Representation of the debtor at the meeting of creditors and
> confirmation hearing, and any adjoined hearings thereof;
> d. Attorney's representation of debtor is conditioned on debtor entering
> into an agreement after the filing of the case to pay Attorney for services
> rendered after filing of the case.  Should debtor fail to enter into such an
> agreement, the court may allow Attorney to withdraw from representation
> of debtor on motion of attorney.

Disclosure of Compensation of Attorney for Debtor, Docket 1, p. 8.

The court finds that Mr. Wu charged the Debtor $3,2000 for services actually rendered

prepetition based on the conflicting contract language and the Debtor's testimony that she signed

the Contract for Postpetition Service when she signed the other documents prepetition.

-13-

Pursuant to section 526(c)(1) the court finds that the contracts executed herein between Mr. Wu and the Debtor are void and unenforceable as Mr. Wu has failed to comply with the material requirements of section 526.

## Section 528 of the Bankruptcy Code

Section 528 requires attorneys, as debt relief agencies, not later than five (5) days after bankruptcy assistance is provided, and prior to filing a bankruptcy petition on such person's behalf, to execute a written contract that clearly and conspicuously explains the services the attorney will provide to such assisted person, the fees or charges for such services, and the terms of payment. By not disclosing the ACH agreement with the supplemental disclosure, Mr. Wu failed to completely disclose the terms of payment. This violated section 528 as the agreements were not clear. Section 526(c)(1)'s remedy of voiding offending agreements applies to agreements that violate section 528: "Any contract . . . that does not comply with the material requirements of this section, section 527 or section 528 shall be void . . ." 11 U.S.C. § 526(c)(1).

## Mr. Wu's Contentions

Mr. Wu's response pleading to the U.S. Trustee's motion to examine fees asserts that officials from the U.S. Trustee's Office advised him to structure his contract documents in their current form. Response, Docket 33, pp. 2-3. However, he did not present evidence of this at the trial of this matter.[7]

Mr. Wu argues that Local Bankruptcy Rule 2090-5(B) states that an attorney who files a

---

[7] In *In re St. John* where Judge Doyle sanctioned Mr. Wu for improperly using a wage assignment form to collect his fee in a chapter 13 case, he argued that the judges of the district acquiesced in his practice by not discovering it sooner, waiving the court's authority to deny his fee applications. Judge Doyle rejected this suggestion. *In re St. John*, 2022 WL 4827351, *2 (Bankr. N.D. Ill. Sept. 30, 2022). Mr. Wu prefers to blame others for his conduct.

-14-

petition is deemed to appear as attorney of record on behalf of the debtor for all purposes in the

bankruptcy case including contested matters and audits, but not for adversary proceedings. His

reliance on that rule suggests that he could not put most of the tasks owed Debtor in a

postpetition contract because the rule requires him to do so much by virtue of filing an

appearance. The problem is that Mr. Wu may not have complied with that rule as his initial

Disclosure of Compensation states that he may charge additional fees for the following:

"conversion from one chapter to another; reopening a closed case; judicial lien avoidance;

amending a petition, schedule or statement post-filing not due to Attorney's fault and attending

additional creditors' meetings due to debtor's failure to attend the meeting without a good reason

and prior notice." Disclosure of Compensation of Attorney for Debtor(s), Docket 1, p. 8, ¶ 7.

Local Bankruptcy Rule 2091-1(B) provides that in a chapter 7 case where the debtor's

attorney has agreed to represent the debtor conditioned on the debtor entering into an agreement

after the filing of the case to pay the attorney for services rendered after filing and the debtor

refuses to enter into such an agreement, the court may allow the attorney to withdraw from

representing the debtor. The current form of the Local Bankruptcy Rules provides for this at

Local Rule 2040-5(B). According to Mr. Wu, he has attempted to comply with Local

Bankruptcy Rules as well as paragraph 6 of the Form 2030 Disclosure Statement. Paragraph 6

therein states: "By agreement with the debtor(s), the above-disclosed fee does not include the

following services: . . ." Exclusions are allowed.

Mr. Wu's initial Form 2030 disclosure lists the services he promised to perform for the

Debtor and the services excluded from the representation. Docket 1, p. 8. Mr. Wu posits that he

tried to comply with these rules and forms but they presented tensions. The court does not see

any tensions or structural issues that are a hindrance to Mr. Wu's obligation to describe his representation of the Debtor in clear language. The Local Bankruptcy Rule requires that only adversary proceedings can be excepted from representation. Mr. Wu's agreement allows him to exclude from representation additional services. The court finds that there is no conflict or tension between the Local Rules, Form 2030 and his obligation to comply with sections 526 and 528 of the Bankruptcy Code. Attorneys may represent debtors for all purposes from the beginning of their relationship with debtors or pursue a bifurcated arrangement.

Mr. Wu also argues that his reliance on Official Form 2030 has led to the confusion herein as it states at paragraph 5 that the attorney represents the debtor in several respects: to analyze the debtor's financial situation and render advice in determining whether to file a petition; prepare and file schedules and statements of affairs and a plan if required. The attorney also agrees to represent the debtor at the creditors meeting and the confirmation hearing and to represent the debtor in adversary proceedings. The court notes that paragraph 6 therein allows an attorney to state that in agreement with the debtor, the attorney will not represent the debtor in certain services. There, an attorney can note which services will be provided prepetition and which services will be provided postpetition

Mr. Wu argues that he was well within his rights to file certain documents within the 14-day grace period of Fed. R. Bankr. P. 1007(c). The court disagrees and finds that filing required documents 17 days after filing the petition, which is what happened herein, was a violation of Fed. R. Bankr. P. 1007(c), as the documents should have been filed with the petition or within 14 days thereafter.

Mr. Wu also argues that the U.S. Trustee accuses him of violating section 526(a)(1) by

-16-

failing to perform services he promised to provide. He is not accused of not performing those services; his problem is that he structured his agreements in a confusing and misleading manner.

Mr. Wu argues that Form 2030 was not designed to handle split-fee filings because on its face it covers the entire case. The court disagrees. As noted above, that form allows attorneys to except services from representation. Mr. Wu noted in paragraphs 6 and 7 of the Form 2030 he submitted that certain services were not to be provided and that he could withdraw if the Debtor failed to sign a postpetition agreement. He added language in paragraph 6(d) that representation was conditioned on Debtor entering into a postpetition agreement. In paragraph 7 he limited the services to be provided, noting that he could charge additional fees for several services. Form 2030 does not prohibit split-fee filings directly or indirectly. Disclosure of Compensation, Docket 1, p. 8.

Mr. Wu argues that the ACH form and the Wage Assignment forms were not fully executed because he could not predict the amount of a future default. The court gives this response some weight and finds that the condition of those forms did not violate the Code or Rules. In any event, the court would have to be informed of Illinois law on these issues. What does Illinois law require regarding ACH and Wage Assignments? His failure to disclose the ACH agreement form adds to the confusing, misleading nature of his procedures. He is not being sanctioned for the contents of that form.

Mr. Wu violated section 526 as he promised in the disclosure and the attached Attorney Retention Contract that he had agreed to analyze the Debtor's financial condition and to render advice to determine whether to file a bankruptcy petition. He also agreed to prepare and file petitions, schedules, a statement of affairs and a plan. Docket 1, p. 8. The Attorney Retention

-17-

Contract dated March 2, 2024 states that Mr. Wu would counsel and represent the Debtor in the bankruptcy case for $0 compensation, subject to her executing a postpetition contract for an anticipated fee of $3200 for services to be rendered after filing.

The U.S. Trustee complains that Mr. Wu did not file the Debtor's schedules and statement of financial affairs until the Debtor entered into the Contract for Postpetition Service for $3,200. Therein Mr. Wu agreed to prepare and file schedules and statements. The problem is that he had already agreed to do so in the prepetition Attorney Retention Contract for $0. This amounts to the kind of confusion and misleading statement that Code section 526(a)(3)(A) prohibits.

Has Mr. Wu violated Code section 528 which requires that an attorney execute a contract with a debtor that clearly and conspicuously describes the services to be provided and discloses the terms of payment? Yes. As noted above, because Mr. Wu has promised to perform identical services in each agreement it is difficult to determine whether he was obligated to deliver legal services prepetition (for a $0 fee or postpetition for $3,200).

Since both the prepetition contract and the postpetition contract indicate that Mr. Wu was obligated to prepare and file schedules and a statement of financial affairs, Mr. Wu did not clearly and conspicuously describe the services to be rendered, as required by section 528(a)(1).

The terms of payment should disclose the source of periodic payments, the dates when the periodic payments would be due and the amount of each payment. The debtor has to agree to the payments terms in writing. *In re Patrick*, 2014 WL 3722005, *3 (Bankr. W.D. La. July 23, 2014). The ACH document delineates the source and timing of payments. However, it was not timely disclosed with the supplemental disclosure.

-18-

The Debtor testified herein that when the Attorney Retention Contract was executed on March 2, 2024 she did not know what the paragraph about the postpetition contract meant. Oct. 23, 2024 Transcript, Docket 52, pp. 48-50. She also testified that she signed the Contract for Postpetition Service when she signed the Attorney Retention Contract which means that the first and second agreements were signed on the same date, March 2, 2024. *Id.*, pp. 55-56. That means that there is no pospetition contract, making the debt owed Mr. Wu a prepetition discharargeable debt.

The U.S. Trustee argues that Mr. Wu engaged in a pattern of violating section 526 for at least six years, citing *In re Zambrano*, 2022 WL 16646807, *6 where a court referred to Mr. Wu's unabated violations of section 526 beginning in 2018. That court sanctioned Mr. Wu for making prepetition security arrangements in the form of blank wage assignments to improve his chance of collecting fees:

> In short, Mr Wu has breached not only his obligations as an officer of the court but also his duties as a fiduciary for his clients by obtaining from them security arrangements which he is not entitled to receive and then certifying to the Court that he had done no such thing. Congress adopted the debt-relief agency rules set forth in Sections 526 through 528 of the Bankruptcy Code precisely to prevent behavior of this sort.

*Id.*

While *Zambrano* was a chapter 13 case and this is a chapter 7 case, Mr. Wu's conduct is a variation on the same theme in connection with his retention, fee, billing and collection practices in that he does not conduct himself in this regard in a clear and understandable manner.

Should the court enjoin him from further such violations? The court will issue an injunction.

-19-

## Conclusion

The Attorney Retention Contract and the Contract for Postpetition Service are held to be void. The $3,200 fee Attorney Xiaoming Wu charged Debtor Ollistine M. Jude-Weathersby is unenforceable and shall be refunded to her on or before February 17, 2025.

This Memorandum Opinion represents the court's Findings of Fact and Conclusions of Law. A separate order will be entered.

**Date:  January 14, 2025**                    **ENTERED:**

_Jacqueline P. Cox_

**Jacqueline P. Cox**
**Chief Bankruptcy Judge**